[No 34996. *En Banc*. February 16, 1961.]

THE STATE OF WASHINGTON, *Respondent*, v. HAROLD
WILLIAM JONES, *Appellant*.[1]

*John A. Petrich, H. Frank Stubbs,* and *Jack E. Tanner,* for appellant.

*John G. McCutcheon, Keith D. McGoffin,* and *Richard A. Mattsen,* for respondent.

HILL, J.—The problem posed is what should be done when an appellant becomes insane while his appeal is pending and before it is argued.

[1] Reported in 359 P. (2d) 311.

Harold William Jones appealed from a judgment and sentence, entered November 18, 1958, by the superior court of Pierce county, adjudging him guilty of murder in the first degree and imposing the death penalty. This judgment was pursuant to the verdict and recommendation of the jury.

The appellant's brief on appeal was filed in the superior court on March 24, 1960, and that brief and the state's brief were filed in this court on May 4, 1960.

The appellant was indigent, and has been represented at all times, both in the superior court and in this court, by very capable court-appointed counsel.

May 9, 1960, counsel for appellant for the first time raised the question of the appellant's then mental condition. The case was remanded to the superior court of Pierce county for a determination of that question. That court, on the basis of the report of a sanity commission, entered an order on August 24, 1960, in which it found that the appellant

" . . . is suffering from psychosis and is therefore insane, and that such condition will continue indefinitely,"

and that the appellant

" . . . does not now appreciate his peril and he is unable to assist his counsel or himself in his defense in this matter."

Appellant's counsel then moved to stay the appeal, the date for oral argument having already been set by this court. The motion has been argued and is now before us for decision.

A plea of not guilty by reason of insanity had been interposed at the trial; however, the verdict of guilty was a conclusive determination of that issue adverse to the appellant. *Grossi v. Long* (1925), 136 Wash. 133, 238 Pac. 983. There had been no suggestion, at the trial, that the defendant did not appreciate his peril, or that he was unable to assist counsel in his defense; nor did such condition seem to exist while counsel were preparing their brief on the appeal. No suggestion of his incompetence to prosecute the appeal appears until six weeks or more after his

appeal brief had been filed. It is very plausibly argued that the issues on the appeal have been framed by the briefs and nothing remains but the oral argument; there are no facts to be considered except those in the record, and there is no phase of the appeal in which Mr. Jones could be of any assistance to his counsel.

Nevertheless, there is the question of the right, or authority, of an attorney to continue to represent a client who has become incompetent. See *Flaherty v. Flaherty* (1957), 50 Wn. (2d) 393, 397, 312 P. (2d) 205. True, we have here a situation where the attorneys were appointed by the court and the appellant could not discharge them without the permission of the court, even had he remained sane. Nonetheless, if mentally competent to participate in the appeal and not satisfied with the way in which his counsel were proceeding, it would be his privilege to supplement their efforts on his behalf. See *State v. Mode* (1960), 55 Wn. (2d) 706, 349 P. (2d) 727, in which the necessity for court-appointed counsel on an appeal is discussed. Further, he would be permitted to argue his case *pro se.* This privilege has been extended to prisoners, without counsel, in death-penalty cases *(State v. Bird* (1948), 31 Wn. (2d) 777, 198 P. (2d) 978), and should be extended to appellants in such cases who are dissatisfied with the efforts of counsel in their behalf. (Appellants in noncapital cases, in jail at the time their appeals were heard and who were without counsel, have had to submit their cases on the briefs.)

We are satisfied that when it is established that an appellant is incompetent to proceed with his appeal prior to the argument thereof because he does not appreciate his peril and is unable to assist his attorneys, or, as said by the Court of Appeals of New York, is unable "to confer with his counsel in reference to the argument thereof [his appeal]" (see *People v. Skwirsky* (1914), 213 N. Y. 151, 107 N. E. 47), the appeal should be stayed because the appellant is not competent to prosecute it.

The cases bearing on this situation have been collected and analyzed in the recent Court of Military Appeals case

of *United States v. Washington* (1955), 6 U.S.C.M.A. 114, 19 C.M.R. 240. This is the only case squarely in point. The three judges divided three ways: one judge held that the insanity of the defendant deprived the court of jurisdiction to proceed further and automatically stayed all proceedings; another judge held that the court had jurisdiction to proceed, but should exercise its discretion and stay the proceedings; and the third judge held that the court had jurisdiction to proceed and should proceed with the case and complete appellate review. Two judges favored the staying of the appellate proceedings and that was done. The varying points of view are well and exhaustively expressed in the three opinions, and recapitulation is unnecessary.

 Suffice it to say that while, as we have indicated, it is our intention to stay the appeal in this case, we do it not because we question our jurisdiction to proceed with appellate · review (if adequate safeguards for the insane appellant are provided), but because the appeal must be prosecuted, if at all, by a guardian or a guardian ad litem.

While it is unquestionably true that an appeal would rarely be prosecuted under such conditions, it should be possible. There may be numerous reasons, in a case where the death penalty is not involved, where a determination of an appeal—even if adverse to the insane appellant— might be more advantageous than an indefinite stay of the proceedings. Even where the death penalty· has been imposed, if the claimed errors were clearly established, a reversal of the conviction and the removal of the status of convicted felon might conceivably make the prosecution of an appeal advisable. (In such a case the judgment, if affirmed, would not be executed while the insanity continued. *State v. Davis* (1946), 6 Wn. (2d) 696, 717, 108 P. (2d) 641; *Grossi v. Long, supra.*) The election to proceed with the determination of the appeal should rest with those designated by the appropriate court to protect and safeguard the interest of the insane appellant.

It appearing to this court that the appellant is at this time not competent to proceed with his appeal, all proceed-

ings herein are stayed until his competency to so proceed is restored, or someone appointed and qualified as his guardian or guardian *ad litem* shall show good cause why they should be permitted to prosecute the appeal in his behalf.

It is so ordered.

FINLEY, C. J., DONWORTH, WEAVER, ROSELLINI, OTT, FOSTER, and HUNTER, JJ., concur.

MALLERY, J. (dissenting)—The question of appellant's competency became an issue in the trial when he entered a plea of insanity. The jury found he was then competent. It is undisputed that his present incompetency occurred after he elected to appeal *by his counsel*. He alone had the right to make this decision at the time he made it. Because of his present incompetency he cannot now alter the decision and decide to present his appeal *pro se*. It is true there have been very rare cases wherein the appeals were presented by the appellants *pro se*; but this case should not be decided upon that basis contrary to the facts herein since this appellant made no such election. If he had done so, I would then agree with the majority.

The appellant's insanity subsequent to conviction only stays his execution. It does not abrogate his right to an appeal *by counsel* because that right became vested by an authoritative action of his own during his competency. Neither his counsel nor this court can question the validity of his decision not to appeal in his proper person without violating his constitutional right to be represented by counsel.

Counsel has the obligation of presenting appellant's appeal to this court. This court should not excuse him from so doing in due course.

Let it be remembered that this is a criminal action. Counsel was duly appointed to represent the appellant by the only process known to the law.

Constitutional rights in criminal matters are peculiarly personal and even if the appellant had a guardian with authority to exercise discretion on his behalf over his prop-

erty and person he could not waive a constitutional criminal right which is never within the scope of a guardianship. The only recognized procedure for the protection of the constitutional rights of an incompetent charged with crime is the appointment of counsel for him, as was done in this case. Counsel, however, cannot waive a defendant's constitutional rights without his knowing consent. In this case, the appellant cannot consent by reason of his present incompetency. The result is that due process requires that his constitutional rights be exercised, including the due and orderly presentment of his appeal.

There is an unrebuttable presumption that appellant's competent decisions remain unchanged during his incompetency. No act of his is necessary to perpetuate his right to have his appeal presented by counsel. There is no procedure by which counsel can be authorized to waive this right or to change the appellant's competent decision thereon. Appellant did not make this motion to continue his appeal and, since no sanction can be found in the law for his counsel to do so in derogation of his vested right, it should not be entertained by this court.

I would not excuse counsel from the labor of presenting the appeal. I would not speculate upon its therapeutic effect upon the appellant. I would hear the appeal and dispose of it in due course in accordance with the vested right secured by appellant's last competent authoritative act on his own behalf. He is entitled to due process even though incompetent. I would give it to him.

I dissent.