# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CHRISTOPHER KING, J.D.<br>a/k/a KINGCAST<br><br>      Appellant,<br><br>    v.<br><br>FACEBOOK, INC.,<br><br>      Respondent. | No. 79874-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

APPELWICK, J. — King sued Facebook for injunctive relief relating to the suspension of his account. He then served Facebook with three sets of discovery requests. Two days before Facebook's first discovery deadline, King filed a motion to compel responses to all of his requests. Facebook opposed the motion. After meeting its first discovery deadline, Facebook filed a motion to dismiss and a motion for a protective order. It asked the trial court to stay discovery pending the resolution of its motion to dismiss. The trial court denied King's motion to compel and granted Facebook's motion for a protective order. It also awarded Facebook reasonable attorney fees and costs for responding to King's motion. King argues that the circumstances of this case do not warrant an assessment of attorney fees. We affirm.

## FACTS

On November 7, 2018, Christopher King filed a complaint seeking injunctive relief against Facebook, Inc. He alleged that Facebook violated its terms of service

Citations and pin cites are based on the Westlaw online version of the cited material.

by suspending his account on two occasions after he posted about his experience dealing with racism. In offering an explanation of the posts that resulted in his suspension, he used the "N word" and described an encounter he had with police. King asserted breach of contract, outrage, and promissory estoppel claims, as well as a claim under 42 U.S.C. § 1981. He sought the immediate reinstatement of his Facebook privileges, a public apology from Facebook, and compensatory and punitive damages.

On November 13, 2018, a process server served the complaint on Facebook's registered agent in California, along with King's first set of discovery requests. The requests consisted of nine interrogatories, nine requests for production, and two requests for admission. Some of the requests sought data about other Facebook users, including how many user accounts had been suspended for using the N word since January 2013. None of King's requests were signed.

King served Facebook with a second set of discovery requests on November 30, 2018. This second set included six additional interrogatories and two additional requests for production. All of the requests were signed. Facebook's responses to King's second set of requests were due on January 2, 2019.

On December 12, 2018, Facebook explained to King over the phone that because his first set of discovery requests were not signed, they did not comply with CR 26(g) and Facebook was not obligated to respond. King agreed to rectify the error by sending signed versions of his first set of requests.

2

King served Facebook with a signed, revised first set of discovery requests on December 14, 2018. The requests included 19 interrogatories, 19 requests for production, and 5 requests for admission. In addition to seeking data about other Facebook users, the requests sought Facebook's rationale for suspending specific user accounts. Facebook's responses to King's revised first set of requests were due on January 14, 2019.

King served Facebook with a third set of discovery requests on December 18, 2018. This third set consisted of two additional interrogatories and four additional requests for production. Facebook's responses to King's third set of requests were due on January 18, 2019.

On December 27, 2018, about a week before Facebook's first discovery deadline, King e-mailed counsel for Facebook asking if it intended to provide substantive answers to his discovery requests. If so, he asked counsel to "state the extent of [Facebook's] anticipated responses." He also told counsel that if he did not hear back the following day, he would "reasonably assume the answer is in the negative" and "proceed on that basis." Counsel for Facebook responded the next day. He told King that on January 2, Facebook would be providing "objections to the requests that are due (the second set) along with a motion for a protective order." In a separate e-mail, he asked if King would be willing to stay or postpone Facebook's discovery deadlines until its planned motion to dismiss was decided. King responded by stating that he would be filing a motion to compel.

On December 31, 2018, King filed a motion to compel Facebook to respond to all of his discovery requests in full. Facebook opposed the motion. In doing so,

3

it argued that the motion was "predominantly a preemptive opposition to Facebook's motion for a protective order," and that King's requested relief would strip Facebook of its right to make timely objections to his requests. It argued next that the motion was "substantively defective." It explained that King made "sweeping requests that would require Facebook to scour years' [sic] worth of data and personal information" on other user accounts, but failed to articulate why the requests were relevant or likely to lead to relevant information. Facebook also requested attorney fees under CR 37(a)(4).

On January 2, 2019, Facebook filed a motion to dismiss the case. It also filed a motion for a protective order, asking the trial court to extend the time for it to respond to King's discovery requests until the court ruled on its pending motion to dismiss. Last, it served King with responses and objections to his second set of discovery requests.

The trial court ruled on Facebook's and King's discovery motions on February 1, 2019. First, it granted Facebook's motion for a protective order. It explained that it agreed with Facebook that "neither party will be prejudiced by a brief stay on discovery pending the court's ruling on [Facebook]'s [m]otion to [d]ismiss, which is scheduled for hearing on February 15, 2019."

Second, the trial court denied King's motion to compel. It concluded that King filed his motion "prematurely because [Facebook]'s responses to [King]'s discovery requests were not due on December 31, 2018." It further stated that it was "unable to find that [King]'s motion was 'substantially justified or that other circumstances make an award of expenses unjust.'" (Quoting CR 37(a)(4).) As a

result, it stated that it would award Facebook its reasonable fees and costs under CR 37(a)(4). It directed Facebook to file a motion seeking the fees and costs it incurred in responding to the motion to compel.

A few days later, Facebook filed a motion seeking $2,504.49 in reasonable attorney fees and costs. On February 15, 2019, the trial court granted Facebook's motion to dismiss, dismissing King's complaint without prejudice. Later that month, it granted Facebook's motion for fees and awarded it $2,504.49. King then filed a motion for reconsideration of the fee award, which the court denied.

King appeals the trial court's decision to award Facebook attorney fees.

## DISCUSSION

King argues that the trial court's assessment of attorney fees is unwarranted due to the "[t]otality of [c]ircumstances on [l]aw and in [e]quity." Specifically, he contends that he was entitled to file the motion to compel because Facebook told him that it was not going to provide any discovery responses. He also asserts that awarding Facebook attorney fees was "needlessly punitive." Last, he points out that he is a pro se litigant with limited means, while Facebook is a wealthy corporation.[1]

Under CR 37(a)(4), a trial court shall award attorney fees to a party who successfully opposes a motion to compel, unless the motion was substantially justified or other circumstances make an award of expenses unjust. A trial court

---

[1] In a section of his brief titled "Public Policy, Equity and Ongoing Bad Faith," King goes on to assert that Facebook is an abusive and monopolistic entity. He also discusses the merits of his claims against Facebook in a separate federal action. Because these arguments are not relevant to whether the trial court erred in awarding Facebook attorney fees, we do not address them.

has broad discretion to award attorney fees. Dalsing v. Pierce County, 190 Wn. App. 251, 267, 357 P.3d 80 (2015). We will not disturb an award of attorney fees except upon a clear showing that the court abused its discretion. Id.

King argues first that "volumes of [d]ecisional case law do not support an assessment or award of attorney fees or costs" here. He cites no Washington authority to support that proposition.[2] He further asserts that "no sanctions should issue" because he was entitled to file a motion to compel when Facebook "flat out stated in a [CR] 26 [c]onference that it was [not] providing any responses." And, he states that he would have been entitled to file the motion three days later when Facebook "fail[ed] to issue responses."

Facebook did not state that it would not be providing any discovery responses. Rather, in a December 28, 2018 e-mail, counsel for Facebook told King that Facebook would be timely providing objections to the second set of discovery requests due on January 2, along with a motion for a protective order. King responded the same day and told Facebook that he would be filing a motion to compel. He also stated that he would "wait until [January] 2nd to determine the extent of [Facebook]'s response to that set of [d]iscovery [r]esponses" so he would not have to go back and "[a]mend anything." Instead, King filed a motion to compel

---

[2] Instead, King cites two federal cases where the court denied a motion to compel but did not issue sanctions. He also cites a number of federal cases to support the proposition that the filing of a dispositive motion does not automatically constitute good cause for a stay of discovery. He does not elaborate further on this argument. Nor does he assign error to the trial court's order granting Facebook's motion for a protective order and staying discovery during the pendency of its motion to dismiss. We do not review a claimed error unless the appellant assigns error to it. RAP 10.3(a)(4). Accordingly, we do not address King's argument regarding the trial court's decision to stay discovery.

responses to <u>all</u> of his discovery requests on December 31, two days before Facebook's first discovery deadline. Facebook then timely served King with its first set of responses and objections on January 2. It also filed a motion for a protective order on that date.

Rather than waiting to review Facebook's objections and allowing the court to evaluate the scope of those objections and its motion for a protective order, King filed a motion to compel two days before Facebook's first discovery deadline and weeks before its remaining deadlines. He states that he would have been entitled to file the motion "a scant three (3) days later" when Facebook served its objections to his second set of discovery requests. But, he fails to demonstrate the necessity of filing the motion before any of Facebook's discovery responses were due. Under these circumstances, the trial court did not abuse its discretion in determining that King's motion to compel was not substantially justified.

King argues next that the trial court should not have awarded Facebook attorney fees because they were "needlessly punitive." He cites no authority to support that assertion. Nor does he cite authority that would prevent a trial court from awarding attorney fees where such fees serve a punitive purpose. Where a party fails to cite authority to support a proposition, "the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." <u>DeHeer v. Seattle Post-Intelligencer</u>, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). We hold pro se litigants to the same standard as attorneys. <u>Kelsey v. Kelsey</u>, 179 Wn. App. 360, 368, 317 P.3d 1096 (2014).

CR 37(a)(4) requires a trial court to award attorney fees to a party who successfully opposes a motion to compel, unless the motion was substantially justified or other circumstances make an award of expenses unjust. As established above, the trial court did not abuse its discretion in determining that King's motion was not substantially justified. Thus, without a determination that other circumstances made an award unjust, the court was required to award Facebook attorney fees.

King last points out that he is a pro se litigant with "limited means," while Facebook is a wealthy corporation. His statement implies that awarding Facebook attorney fees under these circumstances would be unjust because he cannot pay them. But, King failed to raise inability to pay as an issue below. He presented no evidence to the trial court to support that he did not have the financial resources to satisfy such a judgment. As a result, we do not consider this argument on appeal. See RAP 2.5(a) ("The appellate court may refuse to review any claim of error which was not raised in the trial court.").

The trial court did not abuse its discretion in awarding Facebook attorney fees under CR 37(a)(4).

We affirm.

_Appelwick, J._

WE CONCUR:

_Brennan, J_          _Dwyer, J._